# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JAMIE C.,[1]

                                             Plaintiff,

      v.

                                            3:21-CV-105

KILOLO KIJAKAZI,                           (ATB)

                              Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
KEVIN M. PARRINGTON, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for disability insurance benefits ("DIB") on May 5, 2015, and for supplemental security income ("SSI") on September 12, 2015, alleging that she became disabled on December 9, 2014. (Administrative Transcript ("T.") 75, 76, 168-71, 172-78). Her application was denied initially on February 5, 2016. (T. 75, 76, 95-102). Plaintiff requested a hearing, which was held on February

---

[1]In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

23, 2018 before Administrative Law Judge ("ALJ") Perry L. Franklin.  (T. 28-74).  ALJ Franklin issued an unfavorable decision on May 31, 2018, which became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 5, 2019.  (T. 1-6, 9-23).  Plaintiff filed a timely federal action challenging the Commissioner's decision, and on February 5, 2020, the parties stipulated that the matter be remanded to the Commissioner for further administrative proceedings.  (T. 584-86).

On May 14, 2020, the Appeals Council remanded the matter to ALJ David Romeo, who conducted a telephone hearing on September 2, 2020, at which plaintiff and vocational expert ("VE") Esperanza Distefano testified.  (T. 507-56, 587-92).  On October 26, 2020, ALJ Romeo issued a decision denying plaintiff benefits.  (T. 484-500).  Plaintiff did not file written exceptions to the ALJ's decision, making the ALJ's decision the final decision of the Commissioner when the Appeals Council failed to assume jurisdiction sua sponte. 20 C.F.R. § 416.1484(c)-(d).  Plaintiff now challenges ALJ Romeo's determination.

## II.   GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that [she] is not only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience, engage in any other
> kind of substantial gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate area in which
> [she] lives, or whether a specific job vacancy exists for [her], or whether
> [she] would be hired if [she] applied for work

42 U.S.C. § 1382(a)(3)(B).  The Commissioner uses a five-step process, set forth in 20

C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI

disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If [she] is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits [her] physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations. If the claimant has such an impairment, the
> [Commissioner] will consider [her] disabled without considering
> vocational factors such as age, education, and work experience …
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, [she] has the
> residual functional capacity to perform [her] past work. Finally, if the
> claimant is unable to perform [her] past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the

4

ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

At the time of the first administrative hearing in February 2018, plaintiff was 35 years old.  (T. 33).[2]  Plaintiff obtained her GED in the 11th grade because she was "very high functioning," and prepared to take college classes.  (T. 34-35).  Plaintiff had a driver's license, but did not own her own vehicle.  (T. 36).

In 2003, plaintiff was in a motor vehicle accident, which caused, among other things, injury to her hip, right wrist and left hand, a traumatic brain injury ("TBI"), and a torn aorta.  (T. 33, 533).  Plaintiff obtained her college degree after the accident, in 2009, in special education.  (T. 34-35).  While in college, she was provided special accommodations, including additional time to submit assignments and alternative testing locations.  (T. 517).  It took her approximately five and a half years to complete her degree.  (*Id.*).

After college, plaintiff worked in a variety of different job settings, including customer service, daycare, teaching and collections.  (T. 37-44).  Plaintiff testified that she had been "let go" from each of her previous employment positions due to "time missed," whether for medical appointments or because she "needed time to recuperate." (T. 44).

In general, plaintiff testified that the symptoms from her injuries had worsened

---

[2]Plaintiff was 37 years old when she testified at her hearing on remand in September 2020.

over time since the accident.  (T. 534).  She was on medication for depression and anxiety, and she suffered migraines "once or twice a month."  (T. 51, 59).  By the time of the latter hearing, plaintiff's migraines had increased in frequency to six to seven episodes a month.  (T. 528).  Plaintiff testified that she had difficulty with comprehension, and needed "complete silence" while reading or otherwise trying to stay focused.  (T. 35, 50).  Since the accident, she had been dealing with memory issues.  (T. 525).  She became "off task very easily," and required "a lot of breaks" throughout the workday.  (T. 45).  In a typical week, she spent four out of seven days in bed.  (T. 52).  She testified that she could "easily sleep" for 16 to 17 hours a day.  (T. 60-62).  On those days she did not spend in bed, plaintiff prepared simple meals for herself, watched television, read the news, and went on the internet.  (T. 53-54).  She had to be directed to perform household chores, and forgot what she was shopping for without a list.  (T. 54-56).

Plaintiff experienced hip pain, and walked with an abnormal gait.  (T. 46-47, 533).  Her hip and hand pain was exacerbated by the cold weather.  (T. 48-49, 534-35).  She estimated that she could lift up to 15 pounds for a portion of the workday, stand for 20 minutes at a time, and sit for 30 minutes at a time.  (*Id.*).  The injuries plaintiff sustained to her right wrist and her left hand had required surgical repair.  (T. 48).  As a result, she experienced pain in her hands when lifting items over 15 pounds.  (T. 47).  She was limited in her ability to lift, grab, button, and zip.  (T. 535-37).

## IV.   THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ found that plaintiff had not

engaged in substantial gainful employment since her alleged onset date of December 9, 2014. (T. 490).  At step two, the ALJ found that plaintiff had the following severe impairments: "status post motor vehicle accident resulting in traumatic dislocation with closed reduction of the right hip; aortic transection repair, left subdural hematoma craniotomy and evacuation; right distal radius fracture; jujenostomy; traumatic brain injury with bifrontal encephalomalacia; anxiety disorder; right lower extremity spasticity and foot drop; and migraine headaches with aura as well as a left navicular scaphoid fracture."  (T. 490).  At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (*Id.*).

At step four, the ALJ found that plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except

> no ropes, ladders or scaffolds, occasional ramps and stairs, occasional balance and stoop, frequent handling, finger and feeling with either upper extremity, no high exposed places or moving mechanical parts, no concentrated exposure to extremes of heat, cold, humidity, vibration, or respiratory irritants, occasional interaction with supervisors, co-workers, and the public, can work at a consistent pace throughout the workday but not at a production rate pace where each task must be completed within a strict time deadline, can understand, remember and carry out simple instructions and make simple work related decisions, cannot tolerate high volume output, very short deadlines, or high levels of precision, can tolerate a low level of work pressure defined as work not requiring multitasking, very detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, and no more than occasional changes in work setting, can tolerate a moderate noise intensity level as defined in the Dictionary of Occupational Titles, and can tolerate occasional exposure to light brighter than that typically

7

> found in an indoor work environment such as an office or retail
> store.

(T. 492).  Based on the above RFC, the ALJ determined that plaintiff was unable to

perform her past relevant work.  (T. 498).  However, based on the VE's testimony and

considering the plaintiff's age, education, prior work experience and RFC, the ALJ

found that plaintiff could perform jobs which existed in significant numbers in the

national economy. (*Id.*).  Thus, the ALJ found that plaintiff was not disabled.  (T. 500).

## V.  **ISSUES IN CONTENTION**

Plaintiff raises the following arguments in support of her position that the ALJ's

decision is not supported by substantial evidence:

1. The ALJ's evaluation of Dr. Patel and Dr. Bertini's opinions failed to
   comply with the Treating Physician Rule, or otherwise comport with the
   applicable regulations regarding the evaluation of opinion evidence. (Pl.'s
   Br. at 11-21) (Dkt. No. 13).

2. The ALJ improperly substituted his lay opinion for that of plaintiff's
   treating physicians. (Pl.'s Br. at 21-24).

3. The step-five determination is not supported by substantial evidence.
   (Pl.'s Br. at 24-25).

Defendant argues that the Commissioner's decision is supported by substantial

evidence. (Def.'s Br. at 4-25) (Dkt. No. 16).[3]  For the following reasons, the court

concludes that the ALJ's evaluation of the medical evidence of record did not comport

with the requirements of 20 C.F.R. §§ 404.1527 and 416.927, including the Treating

Physician Rule.  Moreover, the ALJ's evaluation of the opinion evidence of record left

---

[3]Plaintiff filed a reply brief, in which she further challenged the ALJ's evaluation of the medical
evidence.  (Dkt. No. 19).

an evidentiary gap that did not adequately support the RFC determination under the substantial evidence standard.  Accordingly, the court orders a remand for further administrative proceedings to adequately develop and assess the medical evidence as necessary, in order to determine an RFC that is properly supported.

## VI.   RFC/Weight of the Evidence

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8

(N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990); *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Weight of the Evidence/Treating Physician

The regulations regarding the evaluation of medical evidence were amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  This plaintiff's application was filed prior to the effective date of the new regulations, thus, the pre-2017 standards apply.  Under the pre-2017 standards, a treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" of the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  In *Estrella v. Berryhill*, the court emphasizes the importance of a treating source's opinion in cases concerning mental impairments, as

"cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence[.]" *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (quoting *Garrison v. Colvin*, 759 F. 3d 995, 1017 (9th Cir. 2014)).

If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the following factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95-96 (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  If, however, "a searching review of the record" assures the court "that the substance of the treating physician rule was not traversed," any error would be harmless.  *Id.*

**B.    Analysis**

Plaintiff argues, *inter alia*, that the ALJ erred by improperly assessing the medical evidence of record and crafting a mental RFC determination without relying on any opinion, thereby arbitrarily substituting his own judgment for competent medical opinion.  Because the ALJ's evaluation of the opinion evidence was not supported by substantial evidence, and essentially left him without a current opinion regarding plaintiff's mental work capacity or functional limitations, the court agrees that remand

11

is necessary to further develop the record and properly assess the opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927.

The ALJ considered the opinions of four different medical sources in assessing plaintiff's RFC.  On January 16, 2016, Allan Hochberg, Ph.D., performed a one-time consultative examination of plaintiff.  (T. 871-75).  Based upon his mental examination, Dr. Hochberg opined that plaintiff had "some difficulties doing just about anything on her own." (T. 874).  He referenced her need for assistance with "anything more involved," and her increased anxiety which "impairs her functioning." (*Id.*).  He noted that plaintiff can do simple self-care and household chores, but that she "probably need[ed] some assistance with shopping for other than simple things[.]" (*Id.*).  Dr. Hochberg further expressed his opinion that plaintiff would show more severe impairments on a longer mental status examination, due in part to her fatigue and attentional difficulties.  (T. 875).  The consultative examiner concluded that plaintiff would "likely have major difficulties being able to sustain persistent concentration and pace in the competitive work environment." (*Id.*).  He suggested that it would be helpful to consult the results of plaintiff's September 28, 2015 neuropsychological evaluation (T. 335), "to corroborate her history and functioning" (T. 875).

The ALJ considered Dr. Hochberg's opinion, finding it to be "somewhat persuasive." (T. 497).  He stated that the consultative examiner's opinion "appears to be somewhat of an underestimation" of plaintiff's mental abilities, "considering the other evidence of record." (T. 497).  (*Id.*).  As example, the ALJ cited to plaintiff's purported lack of cognitive deficits during "most examinations," and her engagement in

tasks "that do involve maintaining her concentration and pace including caring for a parrot, grocery shopping, coloring, going on the internet, listening to music, driving a car, and riding a bike." (*Id.*). The ALJ also recognized plaintiff's neuropsychological examination results, indicating that she had recent memory deficits, but pointed to her noted lack of difficulty "recalling verifiable autobiographical information or daily events" and "previously learned information." (*Id.*).

Based on the available medical records as of February 2016, which included Dr. Hochberg's opinion and the results of plaintiff's neuropsychological examination, state agency medical consultant T. Inman-Dundon, Ph.D. produced a mental RFC assessment of plaintiff. (T. 82). He opined that plaintiff was not significantly limited in the majority of listed mental functional capacities, including her ability to understand and remember very short and simple instructions; carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work related decisions; interact appropriately with the general public; request assistance; accept instruction and respond appropriately to criticism from supervisors; get along with coworkers; and maintain socially appropriate behavior. (T. 82-83). Alternatively, he found plaintiff to be moderately limited in her ability to remember locations and work-like procedures; understand and remember detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; and respond appropriately to changes in the work setting. (T. 82-83). Dr. Inman-Dundon

opined that plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (T. 83).

The ALJ found Dr. Inman-Dundon's opinion to be "somewhat persuasive."  (T. 496).  He endorsed the medical consultant's conclusion that plaintiff could perform the basic mental demands of unskilled work, but would do best in a setting with limited contact to others.  However, the ALJ simultaneously found that plaintiff's treatment records "suggest that she has experienced additional functional limitations since her . . . car accident."  (*Id.*).  Specifically, the ALJ noted that plaintiff's "reported anxiety, memory deficits, and difficulty handling stress suggests that she would have greater mental limitations."  (*Id.*).

The remaining two medical opinions of record considered by the ALJ were those of plaintiff's treatment providers - primary care provider John Bertini, D.O., and neurologist Dharmesh Patel, M.D.  On July 28, 2020, Dr. Bertini prepared a one-page letter, briefly summarizing plaintiff's 2003 injuries and her ongoing symptoms.  (T. 841).  Among these, he indicated that plaintiff continued to have "significant memory impairment due to her TBI," required "cuing to stay on task during conversation," had to "make lists due to overall forgetfulness," and has "chronic daily headaches and migraine headaches."  (*Id.*). He also noted her diagnosis of depression and other "significant mental health issues due to her chronic problems" following the 2003 accident.  (*Id.*).  In conclusion, Dr. Bertini stated that he "support[ed plaintiff's] efforts

14

to undertake the disability process given her impairment." (*Id.*).

The ALJ found that Dr. Bertini's opinion was "not persuasive." (T. 497).  First, the ALJ noted that Dr. Bertini had not provided a specific function-by-function assessment of plaintiff's abilities, nor had he cited to any objective records to support his conclusions. (*Id.*).  The ALJ further stated that Dr. Bertini's findings were inconsistent with his own treatment records, which were "negative for acute distress, repeated falling episodes, on-going hip tenderness or gait abnormalities, or the recommendation that [plaintiff] use an assistive device to ambulate." (*Id.*).  He stated that other evidence of record was also inconsistent with Dr. Bertini's opinion, including the previously listed activities of daily living. (*Id.*).  Last, the ALJ noted that the physician's conclusion as to disability was an issue reserved for the Commissioner. (*Id.*).

Finally, the record contains two formal opinions from plaintiff's neurologist, Dr. Patel.  On both January 18, 2018 and July 3, 2020, Dr. Patel opined that plaintiff's "pain, fatigue, diminished concentration or work pace or need to rest" would cause her to be off task "more than 33% of the day." (T. 811, 482).  He stated that plaintiff's "bad days" would lead to missed time from work at a frequency of two to more than four days per month. (T. 811, 483).  Dr. Patel also issued various opinions in his treatment notes, in conjunction with his neurologic examinations of plaintiff.  For example, in a January 18, 2018 progress note, Dr. Patel assessed plaintiff with a TBI with bifrontal encephalomalacia. (T. 845).  In addition to noting plaintiff's increasing spasticity in her right leg, which was consistently observed upon examination, Dr. Patel

opined that plaintiff's encephalomalacia resulted in "limited cognitive abilities and a limited amount of time she can maintain alertness and handle stimulation at work." (*Id.*). He assessed that plaintiff would "do best with work hours of 4-5 hours per day and not . . . more than two consecutive days at a time." (*Id.*). Accordingly, he concluded that plaintiff "would not be able to maintain full-time employment with her [TBI]." (*Id.*).

The ALJ found that Dr. Patel's opinions were "not persuasive." (T. 498). While recognizing that Dr. Patel had supported his opinions with "some objective clinical findings," the ALJ asserted that the treating neurologist's conclusions were "ultimately inconsistent with the evidence as a whole." (*Id.*). The ALJ advanced that "the majority" of Dr. Patel's treatment notes and the other evidence of record failed to indicate plaintiff's on-going fatigue or cognitive deficits during examinations. (*Id.*). He further suggested that plaintiff's activities of daily living, including her ability to color, listen to music, and ride a bike, were inconsistent with Dr. Patel's opinions. (*Id.*). Last, the ALJ found Dr. Patel's opinion regarding absenteeism to be "speculative." (*Id.*).

The ALJ erred in several respects in weighing the medical opinion evidence in this case. To begin, it is not clear that the ALJ was justified in deciding not to assign controlling weight to the opinion of Dr. Patel, plaintiff's treating neurologist. The decision suggests that the ALJ may have evaluated Dr. Patel's opinion, along with each of the other medical opinions of record, under the improper regulations. As plaintiff points out, instead of assigning a specific weight to the medical opinions, per 20 C.F.R.

§§ 404.1527 and 416.927, it appears that the ALJ focused his assessment on the "persuasiveness" of the medical opinions, pursuant to 20 C.F.R. §§ 404.1520c and 416.920c.[4]  "While the new regulations eschew the old Treating Physicians Rule and the concept of attributing specific weight to those physicians who have a sufficiently close relationship with a claimant, the new regulations retain much of the same focus as the old rule while now asking the ALJ to use substantially similar factors in determining how persuasive a given opinion is." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).  Thus, although the court agrees with the Commissioner that the ALJ's consideration of the "persuasiveness" of the medical evidence does not necessarily mandate remand per se, at base it calls into question whether the ALJ understood his obligation to evaluate Dr. Patel's opinions pursuant to the Treating Physician Rule.

    In any event, the ALJ's treatment of Dr. Patel's opinion makes clear that he not only declined to afford the opinion "controlling weight," but effectively attributed little to no weight to the opinion.  (T. 498).  While the ALJ may have touched on many of the required regulatory factors in analyzing Dr. Patel's opinion, this court cannot conclude that the ALJ provided good reasons for his weight determination.  First, the ALJ reasoned that Dr. Patel's conclusions were inconsistent with the other evidence of record, "which do not indicate that the plaintiff exhibits on-going fatigue or cognitive

---

[4]However, in what appears to be boilerplate language earlier in the decision, the ALJ does state that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927.

deficits during examinations." (T. 498). This characterization did not present a completely accurate summary of the evidence in question. For example, Dr. Patel noted that plaintiff exhibited "expressive aphasia" during his September 8, 2016 examination of plaintiff. (T. 470). On February 16, 2017, Dr. Patel observed that plaintiff was repeating herself at times. (T. 464). He consistently treated plaintiff for her "spastic right leg weakness which significantly disabled her gait," noting that she was falling occasionally. (T. 466-68, 476-77, 483, 844-45, 846-47, 848-49, 867-68).

Dr. Bertini, plaintiff's primary care physician observed plaintiff's deficits in short term memory on several occasions. (T. 390, 412, 427). His treatment notes are consistent with the documented MRI of plaintiff's brain indicating "large areas of encephalomalacia," and Dr. Patel's assessment that plaintiff was consequently limited in her cognitive abilities, and in the amount of time she could maintain alertness and handle stimulation. (T. 472, 845). The ALJ was not entitled to generally claim an inconsistency between Dr. Patel's opinions and the evidence of record, while disregarding or glossing over these problematic findings, without explanation. *See Cintron v. Comm'r of Soc. Sec.*, No. 6:17-CV-06017, 2018 WL 507156, at *5 (W.D.N.Y. Jan. 23, 2018) (finding that ALJ had misrepresented the medical record by "rel[ying] heavily on results of various positive aspects of some of Plaintiff's mental status exams" while glossing over "numerous . . . mental status exams indicating that Plaintiff had an anxious and depressed mood, negative ruminations, and intrusive thoughts . . . [,] which [were] symptoms related to Plaintiff's uncontested PTSD diagnosis").

The ALJ also concluded that little to no weight should be afforded to Dr. Patel's opinion because it was inconsistent with plaintiff's activities of daily living. The ALJ was permitted to consider plaintiff's activities of daily living when evaluating the opinion evidence of record. However, he was still required to explain how the performance of such activities undermined Dr. Patel's opinion and instead demonstrated that plaintiff was capable of performing substantial gainful work in a competitive work environment. *See Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (citations omitted) (finding the ALJ erred by failing to explain how the plaintiff's limited activities of daily living translated into the ability to perform substantial gainful work in a typical competitive workplace environment). The basic activities cited to by the ALJ–in particular, plaintiff's ability to go on the internet, listen to music, color, and ride a bike–do not present any blatant inconsistency with Dr. Patel's opinion that plaintiff would be significantly limited from full-time, gainful work due to her fatigue and cognitive defects. The ALJ failed to explain how these limited activities meant that plaintiff could meet the mental demands of full-time competitive work. *See Miller*, 122 F. Supp. 3d at 29-30; *Samaru v. Comm'r of Soc. Sec.*, No. 18-CV-06321, 2020 WL 3051576 at *10 (E.D.N.Y. June 8, 2020) ("The critical differences between activities of daily living and activities in a full time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer.") (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

The ALJ's final reason for discounting Dr. Patel's opinions as to plaintiff's

absenteeism, because they were "speculative," is not particularly compelling given the lack of any further explanation.  Dr. Patel's opinions as to this limitation appeared to be based on his over four-year treating relationship with the plaintiff and the treatment notes contained in the record.  Moreover, his opinions were in line with those of treating physician Dr. Bertini and consultative examiner Dr. Hochberg.  *See Theresa B. v. Kijakazi*, No. 3:20-CV-0985 (DEP), 2022 WL 484256, at *7 (N.D.N.Y. Feb. 17, 2022).

The court concludes that the ALJ did not provide "good reasons" for assigning Dr. Patel's opinions minimal weight, and a searching review of the record does not assure the court that the substance of the treating physician rule was not traversed.  This is particularly so in light of the fact that "[w]here mental health treatment is at issue, the treating physician rule takes on added importance." *Bodden v. Colvin*, No. 14-CV-08731, 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015).  Accordingly, this matter must be remanded for further analysis of Dr. Patel's opinions.

The ALJ's error in weighing the opinion of Dr. Patel is further exacerbated by his evaluation of the opinions of state agency medical consultant Dr. Inman-Dundon and consultative examiner Dr. Hochberg, the only opinions to which the ALJ afforded some weight, or persuasiveness.  For several reasons, these opinions do not constitute substantial evidence in support of the ALJ's RFC determination, nor his ultimate finding on the issue of disability.  At the outset, it is unclear what portions of Dr. Hochberg's opinion the ALJ perceived to support his conclusion that plaintiff could perform full-time work.  The ALJ found "somewhat persuasive," the consultative

examiner's opinion, which among other things, recognized plaintiff's "major difficulties" with concentration and pace in the competitive work environment. Yet, the ALJ spent the remainder of his assessment explaining why Dr. Hochberg's opinion was an "underestimation" of plaintiff's mental abilities. Even if the ALJ had afforded greater weight to the opinion, it is devoid of any meaningful functional assessments that would support the ALJ's "highly specific" determination that plaintiff could perform less than sedentary work. In practice, the ALJ effectively rejected the medical opinion of Dr. Hochberg, in addition to those of Dr. Patel and Dr. Bertini. Thus, the issue is whether the remainder of the record was clear and contained some useful assessment of plaintiff's limitations from a medical source sufficient to support the RFC determination.

The only other opinion to which the ALJ afforded some weight in crafting a mental RFC determination was that of Dr. Inman-Dundon. "The Second Circuit has recognized that '[t]he opinions of non-examining medical personnel cannot, in themselves and in most situations, constitute substantial evidence to override the opinion of a treating source.' " *Worthy v. Berryhill*, No. 3:15-CV-1762, 2017 WL 1138128, at *6 (D. Conn. Mar. 27, 2017) (quoting *Schisler v. Sullivan*, 3 F.3d 563, 570 (2d Cir. 1993)). However, "the ALJ is entitled to give the opinions of non-examining sources more weight than those of treating or examining sources where there is record evidence to support such a determination." *West v. Berryhill*, No. 3:17-CV-1997, 2019 WL 211138, at *5 (D. Conn. Jan. 16, 2019); *see also Worthy*, 2017 WL 1138128, at *6 ("Social Security regulations . . . 'permit the opinions of nonexamining sources to

override treating sources' opinions, provided they are supported by evidence in the record.' ") (quoting *Schisler*, 3 F.3d at 568). "Nonetheless, the ALJ may not credit a non-examining physician's opinion over that of a treating physician's where the non-examining physician's opinion considered less than the full record and the subsequent medical evidence may have altered the opinion." *West*, 2019 WL 211138, at *5.

Here, Dr. Inman-Dundon opined that plaintiff had no more than moderate limitations in mental functioning, including moderate limitations in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 83). Dr. Inman-Dundon's opinion was submitted in February 2016, and therefore did not consider the approximate four and a half years of subsequent records that were before the ALJ. In particular, this means that the state agency medical consultant did not consider any of plaintiff's treatment records with Dr. Patel, which treatment did not commence until July 2016. Nor did Dr. Inman-Dundon have the opportunity to review any of Dr. Patel's work-preclusive medical opinions, which were based on his lengthy treating relationship with plaintiff. This is especially concerning, considering that (1) the ALJ recognized that Dr. Inman-Dundon's opinion did not adequately account for all of plaintiff's mental functional limitations, and (2) the state agency medical consultant may well have reached a different outcome upon consideration of Dr. Patel's treatment notes and restrictive opinions.

The ALJ did not specifically acknowledge that the state agency medical

consultant did not have access to the full record, nor did the ALJ adequately reconcile his acknowledgment of plaintiff's additional functional limitations with his rejection of those additional limitations opined by Dr. Patel. The court is unable to conclude that substantial evidence supported the ALJ's decision to confer less weight on Dr. Patel's opinion than on that of Dr. Inman-Dundon, which was effectively the only opinion upon which the ALJ relied in crafting his RFC determination.

For the foregoing reasons, remand of this case to the Commissioner is warranted for further proceedings consistent with this decision, in particular in order for the ALJ to reevaluate the medical evidence in compliance with the applicable regulations and the Treating Physician Rule. In the event the ALJ should find that the opinions of plaintiff's treating physicians are entitled to less-than-controlling weight, the ALJ must sufficiently develop the record to address any evidentiary gaps left as a result of his medical assessment. *House v. Astrue*, No. 5:11-CV-915 (GLS), 2013 WL 422058, *4 (N.D.N.Y. Feb. 1, 2013) (ALJ's proper rejection of treating physician opinion nonetheless necessitated remand because absence of any other medical assessment created evidentiary gap); *see also Maxwell H. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0148 (LEK/CFH), 2020 WL 1187610, at *7 (N.D.N.Y. Mar. 12, 2020) (Mental RFC not supported by substantial evidence where the only relevant opinion was rendered stale and ALJ relied on his own judgments and interpretation of the medical evidence).

## VII.  **NATURE OF REMAND**

Because remand is necessary for further administrative proceedings, this court

need not address plaintiff's remaining arguments on the merits.  See, e.g., *Bell v.*

*Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016)

(declining to reach arguments "devoted to the question whether substantial evidence

supports various determinations made by [the] ALJ" where the court had already

determined remand was warranted); *Morales v. Colvin*, No. 13-CV-6844, 2015 WL

2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional

arguments regarding the ALJ's factual determinations "given that the ALJ's analysis

may change on these points upon remand").

"When there are gaps in the administrative record or the ALJ has applied an

improper legal standard . . . remand to the Secretary for further development of the

evidence" is generally appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

This court cannot conclude that "substantial evidence on the record as a whole indicates

that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the

determination of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).  In light

of the time elapsed since plaintiff's initial filing for benefits, this claim should receive

expedited consideration on remand.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case

**REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings

consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.


Dated: September 20, 2022

Andrew T. Baxter
U.S. Magistrate Judge